**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CONCORDE INTERNATIONAL GROUP SECURITIES LITIGATION | Civil Action No. 1:26-cv-02283-DLC |

# MEMORANDUM OF LAW IN SUPPORT OF THE COGENCY DEFENDANTS' MOTION TO DISMISS AND JOINDER IN THE CONCORDE DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900

*Attorneys for Defendants Cogency Global Inc. and Colleen A. De Vries*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

ARGUMENT ........ 3

I. THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER AS TO THE COGENCY DEFENDANTS UNDER EITHER EXCHANGE ACT CLAIM ........ 3

II. THE COGENCY DEFENDANTS ARE NOT ALLEGED TO HAVE MADE THE CHALLENGED PRESS RELEASES OR OTHER POST-OFFERING COMMUNICATIONS ........ 6

III. THE SCHEME-LIABILITY CLAIM FAILS AS TO COGENCY BECAUSE THE COMPLAINT ALLEGES ONLY A MISSTATEMENT, REPACKAGED, NOT AN INDEPENDENT DECEPTIVE ACT ........ 7

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ........ 6

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ........ 5

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ........ 8

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019) ........ 7, 8

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ........ 4

*SEC v. Rio Tinto PLC*,
41 F.4th 47 (2d Cir. 2022) ........ 8

*In re Smith Barney Transfer Agent Litigation*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012) ........ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........ 3, 5

**Statutes**

15 U.S.C. § 78u-4(b)(2) ........ 3

Private Securities Litigation Reform Act ........ 3

## PRELIMINARY STATEMENT

Defendants Cogency Global Inc. ("Cogency") and Colleen A. De Vries ("De Vries," and together with Cogency, the "Cogency Defendants") respectfully submit this memorandum of law in support of their motion, under Federal Rules of Civil Procedure 12(b)(6) and, as applicable, 9(b), to dismiss the First Amended Class Action Complaint (the "FAC") filed by Plaintiff Parthasarathy Krishnamoorthy, individually and on behalf of a putative class of persons and entities that purchased or otherwise acquired Concorde securities between April 21, 2025 and July 14, 2025, inclusive (the "Class Period").

The Cogency Defendants join in and incorporate the arguments and authorities set forth in Concorde International Group, Ltd., Swee Kheng Chua, and Mark Allen Brisson's (collectively, the "Concorde Defendants") memorandum of law in support of their motion to dismiss the FAC to the extent applicable to the claims asserted against the Cogency Defendants.

For efficiency purposes and to avoid duplication, this memorandum addresses only those grounds for dismissal that are unique to the Cogency Defendants, whom the FAC identifies as Concorde's authorized United States representative and agent for service of process, not as officers, directors, shareholders, underwriters, or auditors of Concorde, and not as participants in the alleged trading and promotional campaign. (FAC ¶¶ 26–27, 252) Plaintiff seeks to convert Cogency's statutorily required representative signature into knowing participation in an alleged securities-fraud scheme. The FAC supplies no particularized facts supporting that leap. The Securities Act claim is deficient for the reasons set forth in the Concorde Defendants' memorandum of law, including that Plaintiff lacks standing to assert the claim and, even if he had standing, that the facts alleged do not state a claim. As set forth below, the FAC fails to state a claim against the Cogency Defendants and should be dismissed with prejudice.

## FACTUAL BACKGROUND

The FAC alleges that Cogency served as Concorde's agent for service of process and that De Vries was Concorde's authorized representative in the United States and a Senior Vice President of Cogency. (FAC ¶¶ 26–27) According to the FAC, Cogency, acting through De Vries, signed the original Form F-1 on August 27, 2024, and five amendments filed between September 18, 2024 and January 7, 2025, in each instance "as Concorde's authorized representatives in the United States." (*Id.* ¶¶ 45, 198) Plaintiff characterizes those signatures as approving the filings for issuance and as necessary to the offering. (*Id.* ¶¶ 27, 198)

Beyond the signatures and agency role, the FAC identifies no investor communication, trading instruction, share allocation, sale, promotional message, or coordination with an alleged promoter by either Cogency Defendant. It asserts that "[d]ue to its position, Cogency [could have] prevent[ed] issuance of the fraudulent Registration Statement and Prospectus and/or caused them to be corrected" (FAC ¶ 26), but identifies no drafting decision, substantive instruction, or information received by Cogency or De Vries showing that either controlled the content of a challenged statement. Indeed, while the FAC alleges that "because of their positions with the Company," Chua, Ong, Yap and Brisson, "possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutions investors (i.e., the market)[,]" no similar allegations are made against the Cogency Defendants and the Cogency Defendants are not identified as controlling persons of Concorde in connection with the Third and Fifth Claims. (*Id.* ¶ 22, 240-244, 260-265)

Likewise, the SEC comment-letter allegations describe correspondence between the SEC staff and Concorde, with Concorde responding through Chua, and allege that this correspondence placed the "Concorde Individual Defendants," *i.e.*, Concorde's officers and directors on notice of the asserted deficiencies. (*Id.* ¶¶ 22, 200–203) The FAC does not allege that either Cogency Defendant received,

reviewed, or responded to any comment letter, or received any communication conveying knowledge of a manipulation scheme involving Concorde.

The FAC's scienter allegations as to the Cogency Defendants rest on three facts: (1) that Cogency, through De Vries, signed the original Form F-1 and its five amendments, which Plaintiff recasts as a "repeated course of conduct" (FAC ¶ 198); (2) that Cogency and De Vries had performed the same authorized-representative function for two other foreign issuers, China Liberal Education Holdings Limited and Ostin Technology Group Co., Ltd., whose securities were later the subject of Department of Justice charges (*id.* ¶ 199); and (3) that Cogency, through De Vries, signed a Form S-8 for Concorde on October 30, 2025, after the Class Period and after the Ostin charges were announced. (*Id.*) According the FAC, the China Liberal charges were announced on March 21, 2025, and the Ostin charges on September 10, 2025, respectively more than ten weeks and more than eight months after the final Form F-1 amendment that Cogency signed on January 7, 2025. (*Id.* ¶¶ 198–199) The FAC does not allege that the Cogency Defendants had any role in, or contemporaneous knowledge of, the alleged misconduct at Concorde, China Liberal Education, or Ostin Technology. Nor does it allege that either Cogency Defendant was charged or otherwise implicated in any proceeding concerning those issuers.

As noted, the FAC does not name either Cogency Defendant as a "control person" under Section 15 of the Securities Act or Section 20(a) of the Exchange Act; those claims are asserted only against Concorde's officers and directors and Henry Hackel. (FAC ¶¶ 240–244, 260–265)

## <u>ARGUMENT</u>

### I. THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER AS TO THE COGENCY DEFENDANTS UNDER EITHER EXCHANGE ACT CLAIM

In addition to the arguments advanced in the Concorde Defendants' memorandum of law, the First and Second Claims independently fail as against the Cogency Defendants because the FAC does not plead, with the particularity that Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA") require, a strong inference of scienter as to Cogency or De

Vries. The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). That inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent," judged holistically across all allegations as to each individual defendant. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 309, 323–24 (2007). The inquiry is defendant-specific; the alleged knowledge of Concorde's managers or other offering participants is not, without supporting facts, the knowledge of Cogency or De Vries.

The FAC's scienter theory for the Cogency Defendants thus reduces to the fact of their signatures, their performance of the same statutory signing function for two other issuers later charged by the Department of Justice, and Cogency's signature on a post-Class Period Form S-8. (FAC ¶¶ 198–199) None of these facts, alone or together, gives rise to a cogent inference that Cogency or De Vries knew or recklessly disregarded that Concorde's disclosures were false when the Registration Statement and its amendments were signed between August 2024 and January 2025. Signing successive amendments to the same Registration Statement in the same representative capacity is repetition of a single function, not a "course of conduct" evidencing fraudulent intent.

The FAC's red-flag theory also fails on its own chronology. The China Liberal charges—the only Department of Justice announcement alleged to predate the offering—were announced on March 21, 2025, more than ten weeks after Cogency signed the final Form F-1 amendment on January 7, 2025; the Ostin charges were not announced until September 10, 2025, nearly two months after the Class Period ended. (FAC ¶¶ 1, 198–199) Events that postdate the Registration Statement signature cannot supply knowledge at the time of signing. And even assuming awareness of the China Liberal announcement before the Registration Statement became effective, knowledge of charges concerning another issuer does not establish knowledge that a particular Concorde disclosure was false or that Concorde's IPO was (or would become) part of a manipulation scheme. The FAC identifies no

communication, shared promotional instruction, transaction, or other particularized fact showing that either Cogency Defendant learned that the alleged wrongdoing at China Liberal involved Concorde or somehow related to it. That Cogency served the same statutory function for both issuers does not fill that gap. Recklessness requires more than an allegation that a service provider should have investigated further after learning that another client's securities were allegedly implicated in wrongdoing. *See Novak v. Kasaks*, 216 F.3d 300, 308–09 (2d Cir. 2000).

The SEC comment-letter correspondence between the SEC's staff and Concorde during the registration of the offering is not the missing link. The FAC alleges that this correspondence placed "the Individual Defendants" (not the Cogency Defendants) on notice of "specific deficiencies" in Concorde's disclosures and financial reporting in the months before the offering closed. (FAC ¶¶ 200–203) The FAC identifies no comment or response sent to, received by, or reviewed by either Cogency Defendant. And the allegation that the SEC maintained law-enforcement records in 2026 concerning R.F. Lafferty, Kreit and Chiu says nothing about Cogency, let alone about Cogency's or De Vries's knowledge during the relevant period. (*Id.* ¶ 204)

The same is true of the FAC's collective allegations concerning insider holdings, price appreciation, access to information, and the scheme's purported magnitude. (FAC ¶¶ 176–204, 223) The FAC's motive allegations are directed to Concorde's insiders, who allegedly stood to profit from an inflated share price, and to the Underwriter and Auditor Defendants, who allegedly were compensated in connection with the IPO. (*Id.* ¶¶ 180, 197) No comparable allegation is made as to either of the Cogency Defendants.

Taken together, the FAC's allegations are far more consistent with Cogency and/or De Vries' performance of a disclosed, statutorily required representative function than with knowing or reckless participation in the alleged fraud. The FAC therefore fails to plead an inference of scienter that is "cogent and at least as compelling as any opposing inference" as *Tellabs* requires. 551 U.S. at 324.

## II. THE COGENCY DEFENDANTS ARE NOT ALLEGED TO HAVE MADE THE CHALLENGED PRESS RELEASES OR OTHER POST-OFFERING COMMUNICATIONS

The First Claim also fails against the Cogency Defendants to the extent it rests on Concorde's post-offering statements because the FAC does not allege that either Cogency Defendant had ultimate authority over those statements. Under Rule 10b-5(b), the "maker" of a statement is the person or entity with ultimate authority over its content and whether and how it is communicated. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011).

The FAC distinguishes between Concorde's officers, who allegedly controlled its public statements, and the Cogency Defendants, whose alleged role concerned signing the registration materials. Specifically, the FAC identifies Chua, Ong, Yap, and Brisson as the "Concorde Individual Defendants" who allegedly controlled the contents of Concorde's SEC reports, press releases, and investor presentations. (FAC ¶ 22) The FAC specifically alleges that Chua controlled the press releases and was personally quoted in the May 16 and June 17, 2025 releases. (*Id.* ¶ 185) By contrast, paragraphs 26–27 of the FAC identify the Cogency Defendants' representative signatures on the Form F-1 and amendments; even the allegation that Cogency could prevent issuance or cause correction concerns the Registration Statement and Prospectus, not subsequent press releases or investor communications. (*Id.* ¶¶ 22, 26–27, 185) The alleged authority concerning the registration materials does not, without more, establish ultimate authority over Concorde's subsequent communications.

The statement-specific allegations confirm that distinction. The FAC attributes the May 16 and June 17 press releases to Concorde and expressly quotes Chua. (FAC ¶¶ 50–52, 56, 58–61) It likewise identifies Chua as the signer of the April 30, 2025 Form 12b-25, Concorde as the filer of the May 15, 2025 Form 20-F, and Concorde as the filer of the June 27, 2025 Form 6-K containing the investor presentation and directing investors to its website. (*Id.* ¶¶ 49, 53–57, 62) It does not allege that either Cogency Defendant signed those filings, issued either release, delivered the presentation, or exercised

ultimate authority over any of those communications. The collective assertion that "Defendants" made or participated in making false statements cannot substitute for facts establishing either Cogency Defendant's authority over the particular statement challenged. (*Id.* ¶¶ 219–222)

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.,* 814 F. Supp. 2d 395, 417-18 (S.D.N.Y. 2011) is instructive. There, the court attributed statements in the registration statement to their signatories, but with respect to other statements, including in press releases, separately found "no allegation that anyone other than [the issuer] and the direct issuers of those statements," had authority over those statements' content. *Id.,* at 418. Similarly, *In re Smith Barney Transfer Agent Litigation,* 884 F. Supp. 2d 152, 163-65 (S.D.N.Y. 2012), sustained claims concerning documents the defendant signed while dismissing claims concerning filings he did not sign. *Id.*, at 165. A representative signature on registration materials does not, without more, establish ultimate authority over the issuer's subsequent statements.

Further, Concorde's repetition of language from the offering materials does not, without more, establish that either Cogency Defendant had ultimate authority over the later statements. The FAC alleges no facts showing that either controlled the content of those statements or whether and how they were communicated. Accordingly, the First Claim should be dismissed against both Cogency Defendants insofar as it rests on statements in the April 30 Form 12b-25, the May 15 Form 20-F, the May 16 and June 17 press releases, or the June 27 Form 6-K and accompanying investor presentation.

## III. THE SCHEME-LIABILITY CLAIM FAILS AS TO COGENCY BECAUSE THE COMPLAINT ALLEGES ONLY A MISSTATEMENT, REPACKAGED, NOT AN INDEPENDENT DECEPTIVE ACT

The Second Claim, brought under Rule 10b-5(a) and (c), names Cogency (but not De Vries) as one of the "Scheme Defendants." (FAC ¶ 229) The only allegation in that Claim directed to Cogency is that it "participated in and executed the scheme by serving as the Company's agent for service of process for the offering and by facilitating the issuance of Concorde securities by way of the Registration

Statement and Prospectus." (*Id.* ¶ 234) That allegation does not state a claim for scheme liability. Notably, the FAC attributes the components of the alleged scheme to others: the structuring of the low-float offering and the issuance of promotional press releases to Concorde and its officers and directors (*id.* ¶ 231), and the social-media and messaging-application promotion to unidentified impersonators and operators (*id.* ¶¶ 65–84).

In *Lorenzo v. SEC*, the Supreme Court held that a person who disseminates a false statement with intent to defraud, but who did not "make" it within the meaning of Rule 10b-5(b), may nonetheless be primarily liable under the scheme subsections, Rule 10b-5(a) and (c). 139 S. Ct. 1094, 1100–01 (2019). But the Second Circuit has since confirmed that *Lorenzo* did not abrogate the pre-existing rule that "misstatements and omissions can form part of a scheme liability claim, but an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination." *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022) (discussing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)). The Second Circuit emphasized that reading *Lorenzo* to allow misstatements alone to support scheme liability "would thereby lower the bar for primary liability for securities fraud, along with the pleading standard in cases involving private plaintiffs," and would improperly allow private litigants to "evade the pleading requirements imposed in misrepresentation cases" and "revive in substance the implied cause of action against all aiders and abettors[.]" *Id.* at 51, 54–55 (citation omitted).

Cogency's alleged conduct—serving as agent for service of process and "facilitating" the issuance of the Registration Statement, which, read together with the FAC's other allegations, consists of signing that filing as Concorde's authorized United States representative (FAC ¶¶ 45, 198, 234)—is not dissemination of a false statement to investors of the kind that distinguished *Lorenzo* from a mere misstatement claim. Acting as an agent to receive service of process involves no communication with investors at all. *Lorenzo* involved a defendant who personally transmitted false emails directly to prospective investors, inviting them to ask follow-up questions, with conceded scienter. 139 S. Ct. at

1099, 1101. Cogency's signature on a filing that Concorde itself filed with the SEC is, at most, a step in the process by which Concorde's own alleged misstatements came into being, and is not "something extra that makes a violation a scheme." *Rio Tinto,* 41 F.4th at 54. Indeed, the FAC itself characterizes Cogency's role as a "gatekeeping failure[]" (FAC ¶ 171), an alleged omission, not a deceptive act. The Second Claim should accordingly be dismissed as to Cogency.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Concorde Defendants' memorandum of law in support of their motion to dismiss, in which the Cogency Defendants join, the Court should dismiss the First Amended Complaint in its entirety as against Defendants Cogency Global Inc. and Colleen A. De Vries.

Dated: October 23, 2026

Respectfully submitted,
K&L GATES LLP

By: /s/ Joanna A. Diakos____
Joanna A. Diakos
Zachary Jones
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 536-3900
Fax: (212) 536-3901
Email: joanna.diakoskordalis@klgates.com
Email: zach.jones@klgates.com

*Attorneys for Defendant Cogency Global Inc. and Colleen A. De Vries*

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's Local Civil Rule 7.1(c), the undersigned counsel certifies that the foregoing memorandum of law, which was prepared using Times New Roman 12-point typeface, contains 2,838 words, excluding the parts of the memorandum that are exempt from the word count limit, in compliance with the 8,750-word count limit. This certification was prepared in reliance on the word-count function of the word-processing system used to prepare this document (Microsoft Word).

K&L GATES LLP

By: /s/ Joanna A. Diakos

Joanna A. Diakos
Zachary Jones
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 536-3900
Fax: (212) 536-3901
Email: joanna.diakoskordalis@klgates.com
Email: zach.jones@klgates.com

*Attorneys for Defendant Cogency Global Inc. and Colleen A. De Vries*

Executed October 23, 2026